UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **PEYTON GEORGE** | : | CIVIL ACTION NUMBER: _____ |
| **VERSUS** | : | HONORABLE JUDGE _____ |
| **SHERIFF MARK WOOD**, individually and in his official capacity; **DEPUTY GREGORY PHIPPS**, individually and in his official capacity **LIEUTENANT MICHAEL HALL**, individually and in his official capacity, **DEPUTY JAMES MINOR**, individually and in his official capacity; **JULIA THOULIN**, individually and in her official capacity; **SERGEANT MARCUS TAYLOR**, individually and in his official capacity. | : | MAGISTRATE JUDGE _____ |

## **COMPLAINT**

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT IN AND FOR THE WESTERN DISTRICT OF LOUISIANA, ALEXANDRIA DIVISION:

The Complaint of **PEYTON GEORGE**, a person of the full age of majority and domiciled in the Parish of Rapides, Louisiana, who appears herein on behalf of her minor child, J.G., as her natural tutor, to assert all claims available to J.G. as the surviving child of the decedent Andrew Myles, and would show the court the following in support thereof:

### **INTRODUCTION**

1.

At all times relevant to this matter, the Rapides Parish Sheriff's Office (RPSO) and defendants named herein had actual knowledge of the violent tendencies of Markese Harrell, who has a history of severe mental illness, prior arrests, and extreme violent outbursts. Prior to the subject event, Harrell had demonstrated violent outbursts toward inmates and RPSO deputies while

in the custody of the Rapides Parish Detention Center. On the morning of May 19, 2022, Harrell was experiencing a mental health episode and was arrested for violent behavior, including criminal damage to property, reckless operation of a vehicle, and second-degree battery. Harrell violently attacked the arresting RPSO officers that morning. After his arrest, Harrell's family members immediately communicated with RPSO deputies and the RPSO shift nurse regarding Harrell's mental health issues and violent tendencies. Harrell's family members stressed to the RPSO deputies and nurse that Harrell posed a significant risk of harm to himself and others and could not be placed in a cell with other inmates under any circumstances.

On May 19, 2022, Andrew Myles, 23, was tragically and brutally killed while in the custody of the RPSO. Despite actual knowledge that Harrell posed a serious risk of violence to others, Harrell was placed in a holding cell with other inmates, including Myles. Despite being aware of Harrell's mental health condition and violent tendencies, the RPSO employees did not isolate Harrell, did not restrain Harrell, and did monitor his cell. Myles was asleep on the floor in the holding cell when Harrell proceeded to stomp on Myles' head 48 times and punched him multiple times for approximately two minutes. Other inmates in the holding cell immediately called for help, but RPSO deputies failed to respond until it was too late.

## JURISDICTION AND VENUE

2.

This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of Andrew Myles' rights as secured by the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

3.

Venue is proper in this district under 28 U.S.C. § 1391(b), because the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## PARTIES

4.

The plaintiff is **PEYTON GEORGE**, appearing herein on behalf of her minor child, J.G., as her natural tutor, to assert all claims available to J.G. as the surviving biological child of the decedent Andrew Myles. Plaintiff Peyton George qualifies under LSA- C.C.P. art 4061.1(A)(3) as natural tutor to file this suit as mother of the minor child, J.G.

5.

Named Defendants herein are:

a. **SHERIFF MARK WOOD** in his individual and official capacity as Sheriff of Rapides Parish, Louisiana, an adult citizen of the State of Louisiana and domiciled in the Western District of Louisiana. At all times described herein, WOOD served as the Sheriff of Rapides Parish and, as such, was responsible for the hiring, training, supervision, discipline, and control of the deputies and employees under his command. WOOD was responsible for all actions of RPSO staff. WOOD was also responsible for the supervision, administration, policies, practices, customs, and operations of the Rapides Parish Sheriff's Office and its correctional/detention facilities. WOOD was and is a final policy maker. WOOD is liable both directly and vicariously for the actions complained of herein. Defendant WOOD may be served at his place of business, 700 Murray Street, Alexandria, LA 71301.

b. **DEPUTY GREGORY PHIPPS**, in his individual and official capacity as Rapides Parish Sheriff's Deputy, who is an adult citizen of the State of Louisiana and, on

information and belief, is domiciled in the Western District of Louisiana. At all pertinent times, defendant PHIPPS was employed by RPSO as an officer assigned to the Rapides Parish Detention Center #1. On information and belief, defendant PHIPPS placed Markese D. Harrell, a known violent, dangerous, and mentally unstable inmate, in the same cell with Myles unrestrained, and then failed to monitor the cell, and permitted Harrell to physically beat Myles, resulting in fatal injuries. PHIPPS may be served at his place of business, 700 Murray Street, Alexandria, LA 71301.

c. **LIEUTENANT MICHAEL HALL**, in his individual and official capacity as Rapides Parish Sheriff's Deputy, who is an adult citizen of the State of Louisiana and, on information and belief, is domiciled in the Western District of Louisiana. At all pertinent times, defendant HALL was employed by RPSO as an officer assigned to the Rapides Parish Detention Center #1. On information and belief, defendant HALL placed Markese D. Harrell, a known violent, dangerous, and mentally unstable inmate, in the same cell with Myles unrestrained, and then failed to monitor the cell, and permitted Harrell to physically beat Myles, resulting in fatal injuries. HALL may be served at his place of business, 700 Murray Street, Alexandria, LA 71301.

D. **DEPUTY JAMES MINOR**, in his individual and official capacity as Rapides Parish Sheriff's Deputy, is an adult citizen of the State of Louisiana and, on information and belief, is domiciled in the Western District of Louisiana. At all pertinent times, defendant MINOR was employed by RPSO as an officer assigned to the Rapides Parish Detention Center #1. On information and belief, defendant

        MINOR placed Markese D. Harrell, a known violent, dangerous, and mentally unstable inmate, in the same cell with Myles unrestrained, and then failed to monitor the cell, and permitted Harrell to physically beat Myles, resulting in fatal injuries. MINOR may be served at his place of business, 700 Murray Street, Alexandria, LA 71301.

e. **JULIA THOULIN** in her individual and official capacity as an employee of the Rapides Parish Sheriff's Office, who is an adult citizen of the State of Louisiana and, on information and belief, is domiciled in the Western District of Louisiana. At all pertinent times, defendant THOULIN was employed by RPSO as a nurse assigned to the Rapides Parish Detention Center #1. THOULIN ignored the warnings of Harrell's family members, failed to complete a proper intake screening of Harrell, and despite actual knowledge that Harrell had violent tendencies towards others, permitted Harrell to be placed in the same cell with other inmates, including Myles, unrestrained and mentally unstable, permitting Harrell to physically beat Myles, resulting in fatal injuries. THOULIN may be served at her place of business, 700 Murray Street, Alexandria, LA 71301.

f. **SERGEANT MARCUS TAYLOR** in his individual and official capacity as an employee of the Rapides Parish Sheriff's Office, who is an adult citizen of the State of Louisiana and, on information and belief, is domiciled in the Western District of Louisiana. At all pertinent times, defendant TAYLOR was employed by RPSO as a desk sergeant at the Rapides Parish Detention Center. TAYLOR ignored the warnings of Harrell's family members, failed to complete a proper intake screening of Harrell, and despite actual knowledge that Harrell was violent, dangerous,

unrestrained and a mentally unstable inmate, TAYLOR allowed Harrell to be placed in the same cell with other inmates, including Myles, permitting Harrell to physically beat Myles, resulting in fatal injuries. TAYLOR may be served at his place of business, 700 Murray Street, Alexandria, LA 71301.

## FACTS

6.

At 7:58 a.m. on May 19, 2022, Markese Harrell was arrested by RPSO deputies on charges of Criminal Damage to Property, Reckless Operation of a Vehicle, and 2nd Degree Battery.

7.

After his arrest and before Harrell was booked into Rapides Parish Detention Center #1, family members of Harrell contacted the desk sergeant, Marcus Taylor, and the RPSO nurse Julia Thoulin, to report that Harrell was experiencing a serious mental health emergency and was extremely violent. The family specifically instructed the desk sergeant, Marcus Taylor, and the RPSO nurse, Julia Thoulin, that Harrell was a danger to himself and others, and must be kept in solitary confinement.

8.

Due to his violent behavior and obvious mental illness, RPSO officers transported Harrell to an area hospital before booking him into the Rapides Parish Detention Center #1

9.

Harrell was booked into the Rapides Parish Detention Center #1 at 12:19 p.m. on May 19, 2022. As a result of the violent attack on deputies earlier in the day, and as a result of the actual knowledge of Harrell's violent tendencies, Harrell was placed into solitary confinement until 7:32

p.m. At that time, one or more of the RPSO deputies named as defendants herein transferred Harell from solitary confinement to a holding cell that contained eleven other detainees, including Myles.

10.

On May 19, 2022, Andrew Myles was arrested and booked into RPSO custody at the Rapides Parish Detention Center for minor property offenses. Myles was asleep on the floor of the holding cell with his head on the floor when RPSO officers placed Markese Harrell in the same cell. Shortly after being placed into the holding cell, Harrell began an unprovoked, violent attack that resulted in the death of Myles. The attack lasted approximately two minutes, during which time Harrell stomped on Myles' head 48 times and punched him. The downward stomps caused severe head trauma, including multiple skull fractures.

11.

During this attack, the other detainees were calling loudly for assistance, Harrell was screaming, and it is believed Myles was screaming in pain and pleading for help. The RPSO employees responsible for monitoring this cell, including the defendants named herein, failed to respond.

12.

Video surveillance of the cell where this attack occurred was available to the defendants who were responsible for monitoring this cell, but the video feed was not being monitored.

13.

Despite actual knowledge that defendants placed a high-risk detainee into the cell just minutes earlier, the RPSO defendants left the cell unsupervised and ignored the screams coming from the cell.

14.

RSPO officers eventually responded to the noises and found Myles beaten unconscious by Harrell in the holding cell. Myles died at the hospital the following morning from his injuries on May 20, 2022

15.

The Defendant WOOD is the Sheriff for Rapides Parish and has the responsibility for the operational and supervisory control over the subject detention center, such that Sheriff WOOD is responsible for providing a safe and secure place of confinement for the facility's inmates.

16.

Defendants PHIPPS, HALL, MINOR, THOULIN, and TAYLOR failed to conduct a proper intake screening of Markese Harrell to determine a plan of action for his mental condition and violent tendencies. Defendants removed Harrell from solitary confinement and placed him unrestrained in a cell with other inmates, and then failed to monitor or otherwise supervise the cell.

17.

During Harrell's violent and repeated assaults upon Myles, defendants named herein failed to intervene to stop the attack upon Myles for two minutes.

18.

There was a video surveillance system capturing the holding cell where Myles was housed, and this video surveillance system plainly showed Harrell's attack on Myles. Under the supervision of Defendant WOOD, one or more of the defendants named herein were assigned to monitor the video surveillance system covering this cell. Despite actual knowledge of Harrell's violent tendencies, Defendants PHIPPS, HALL, MINOR, and TAYLOR failed in their duty to monitor the video feed and timely intervene in Harrell's attack on Myles. Such dereliction of duty

establishes the defendants' deliberate indifference to inmates' safety, including Myles' need for protection from harm, including harm from other known violent and mentally unstable inmates.

19.

On further information and belief, on May 19, 2022, one or more of the defendants named herein, including PHIPPS, HALL, MINOR, and TAYLOR, were assigned to monitor/control the subject holding cell where Harrell and Myles were housed and it is believed they were absent from their posts for long periods of time during the incident in question, leaving the cell unsupervised, despite actual knowledge of Harrell's condition and violent tendencies. Such dereliction of duty establishes the defendants' deliberate indifference to inmates' needs for protection from harm, including harm from known violent and mentally unstable inmates.

20.

THOULIN had actual knowledge from Harrell's family members that Harrell posed a serious danger to other inmates and should be placed in solitary confinement. THOULIN was deliberately indifferent to this knowledge and allowed Harrel to be moved from isolation, where he fatally injured Myles.

21.

All Defendants named herein had actual knowledge their actions would place Myles at a significant risk of substantial harm and violated Myles' constitutional right to be protected from attack by other inmates, including a known violent offender with mental conditions, and prison officials have an obligation to act reasonably to protect an inmate from such attack, and to be free from cruel and unusual punishment.

22.

As these rights were clearly established at the time of this incident, Defendants' conduct was objectively unreasonable, conscience shocking, and deliberately indifferent to Myles' rights under the Eighth and/or Fourteenth Amendments of the United States Constitution. As defendants' conduct proximately caused Myles' injuries and death, Defendants are liable under 42 U.S.C. § 1983.

23.

Defendant Wood is responsible for hiring, training, supervising, disciplining and/or retaining all employees at the RPSO. Defendant Wood is responsible for all policies and procedures at RPSO. Defendant Wood is responsible for each and every defendant named herein.

24.

At all pertinent times, Defendant Wood acted as a final policy maker and knew that the policies, practices, and procedures with respect to intake screening, security staffing, inmate monitoring, and inmates with mental conditions at RPSO were inadequate and posed a danger of serious bodily harm to detainees at the Rapides Parish Detention Center. However, Defendant Wood took no action to correct these policies, practices, and procedures. His failure to do so ratified and condoned these practices. His inaction with respect to these policies, practices, and procedures was motivated by deliberate indifference and/or culpable negligence to the serious risks to detainees.

25.

The placement of Harrell in the same cell as other detainees, unrestrained and in an unmonitored cell, under the circumstances described herein, constitutes reckless conduct and conduct that is callously indifferent to Myles' federally protected rights.

26.

Because of the conduct, acts, and omissions of Defendants and those under the supervision of Defendant Wood, described above, Plaintiff's decedent, Myles, endured severe pain and suffering and grievous mental and physical injuries prior to his death.

27.

The Defendants acted negligently, recklessly, wantonly, willfully, knowingly and with deliberate indifference to the rights, care, and safety of Myles, including but not limited to his constitutional right to be free from a violent attack by another unstable inmate and right to be free from cruel and unusual punishment.

28.

As a direct and proximate cause of Myles' wrongful death, his surviving minor child J.G. has suffered permanent damages, including but not limited to grief and emotional distress; loss of support, services, and society, lost companionship, care assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, loss of prospective income, and out of pocket costs.

**COUNT I: CLAIMS UNDER 42 U.S.C. § 1983**

Plaintiff incorporates all of the foregoing paragraphs by reference and further alleges:

29.

At all relevant times, the individual Defendants named herein PHIPPS, HALL, MINOR, THOULIN, and TAYLOR were employees of the Rapides Parish Sheriff's Office, on duty at the Rapides Parish Detention Center, and acted under color of state law.

30.

At all relevant times, Defendant WOOD was a person acting under color of state law, custom or practice in performance of his duties as Sheriff of Rapides Parish, Louisiana.

31.

While Defendants acted under color of state law, they subjected Myles to a deprivation of the rights, privileges, and immunities secured by the Constitution and laws of the United States of America. To wit, Myles had certain federally protected rights arising under the Eighth Amendment and Fourteenth Amendment to the Constitution of the United States, as made actionable by 42 U.S.C. § 1983.

32.

The conduct, actions, and inactions of Defendants, described herein, proximately resulted in a violation of Plaintiff's decedent's rights under the Eighth and Fourteenth Amendments.

33.

The deprivation of rights, as described herein, was the proximate result of acts or omissions or policy made by an official responsible for making final policy or from a practice or custom that is so pervasive as to be the functional equivalent of an adopted policy.

34.

The failure to screen Harrell at intake, the failure to isolate Harrell, the failure to restrain Harrell, the placement of Harrell in the same cell as Myles, and the failure to monitor the cell posed a substantial risk of serious harm to Myles, which the Defendants were subjectively aware of and deliberately indifferent to. Defendants' deliberate indifference to the conditions of excessive risk of violence caused the injuries and death suffered by Myles.

35.

The deliberate placement of Harrell, an unrestrained, known violent and mentally unstable inmate, in an unmonitored cell with Myles to permit this brutal beating is cruel and unusual punishment in violation of the Eight Amendment of the United States Constitution, and a violation of Myles' substantive due process rights as guaranteed by the Fourteenth Amendment of the United States Constitution. At all times relevant hereto, it was clearly established that subjecting a detainee/inmate to such a serious risk of harm and injury at the hands of a violent and mentally unstable inmate amounted to a violation of the Eighth and Fourteenth Amendments. No reasonable official could have misunderstood that Defendants' actions and inactions previously described violated clearly established federal law. Therefore, defendants are not entitled to immunity.

36.

Moreover, there is a pattern and practice at RPSO of inadequate staffing, inadequate inmate intake screening, failing to provide security supervision, failing to monitor the housing inmates, thereby permitting and in fact creating unconstitutional risks to inmate safety. There is further a pattern and practice of failing to provide constitutionally adequate procedures with regard to inmates suffering from medical and psychiatric problems. There is also a pattern and practice of failing to adhere to policies and procedures. There is also a pattern and practice of failing to monitor, supervise, and discipline for RPSO deputies' failure to follow policies and procedures. Defendant WOOD was aware of prior similar violations and failed to take appropriate action to address or prevent them.

37.

The acts/omissions, customs, and policies of Defendants amounted to a conscious and deliberate indifference to a substantial risk of serious harm to detainee Myles that allowed for and caused Myles to be subjected to a vicious and prolonged attack that resulted in his death.

38.

Defendant WOOD, in his official capacity as Sheriff, failed to adequately supervise and monitor detainees in the detention center, failed to properly train and supervise staff members who worked in the detention center, failed to properly classify and segregate inmates/detainees based upon their likelihood for violence and/or psychiatric needs, allowed inmates to be placed in cells which increased the likelihood of inmate on inmate violence, and engaged in additional conduct that created an intolerably high risk of violence and assault such as that which occurred to Myles. Defendant WOOD knew or should have known about the above policies and conditions that created a substantial risk to Myles. By failing to take measures to remedy or ameliorate the substantial risk of serious harm, Defendant WOOD evidenced conscious indifference to the risk of harm to Myles' health and safety.

39.

The conduct of PHIPPS, HALL, MINOR, THOULIN and TAYLOR as described above shows they had no prudent/necessary training, or that they have had inadequate training and supervision by Sheriff WOOD pursuant to the policies, rules, and regulations adopted by Sheriff WOOD for the Rapides Parish Detention Center, specifically policies regarding intake screening, security supervision, monitoring the housing inmates, and precautions for mentally unstable inmates, thereby permitting and in fact creating unconstitutional risks to inmate safety. The lack of such proper training and/or inadequate training and supervision by Sheriff Wood was a direct

cause of the wrongful conduct and constitutional deprivation of the rights of Myles, which caused him injury and his death.

40.

Sheriff WOOD knew, or should have known, thus had actual and/or constructive knowledge, that PHIPPS, HALL, MINOR, THOULIN and TAYLOR routinely did not follow Sheriff WOOD's policies, rules, and regulations as stated above, and denied constitutional protections to persons that were in the custody of the Rapides Parish Detention Center, and thus this tortious conduct was pervasive and presented an unreasonable risk of injury to a citizen like Myles, as Sheriff WOOD refused to enforce his own policies, rules, and regulations.

41.

Alternatively, Sheriff WOOD had no established policy, rules, regulations, or directives, or sufficiently specific or enforced policy, rules, regulations, or directives, which otherwise provided for, and/or mandated that, inmates of the Rapides Parish Detention Center be properly screened, isolated when necessary, monitored, and protected from unreasonable risk of harm. Due to the lack of any formal policy, rules, regulations, or directives, or the enforcement of such which may have been in existence, PHIPPS, HALL, MINOR, THOULIN and TAYLOR had no guidelines or rules upon which to consult to address the mental condition and violent tendencies of Harrell and his need for isolation. Thus, this tortious conduct was pervasive and presented an unreasonable risk of injury and harm to a citizen like Myles.

42.

The failure of Sheriff WOOD to institute or enforce such a constitutionally mandated policy, rules, regulations, or directives constitutes deliberate indifference to Myles' civil rights, and such lack of policy, rules, regulations, or directives was a direct cause of the wrongful conduct

and constitutional deprivation of the rights of Myles, which resulted in his injury, and caused his death.

43.

Defendants are therefore liable to the survivor of Andrew Myles for compensation for violations of the decedent's constitutional rights and for the pain and suffering, mental anguish, and all other damages shown to have proximately resulted from Defendants' conduct ; and for an award to Plaintiff of the expenses of litigation, including attorney's fees and costs, in such amounts as determined by the enlightened conscious of a fair and impartial jury or through the Court during post-trial proceedings.

44.

The actions of the Defendants violated the Federal Constitutionally protected Civil Rights of Myles while the Defendants were acting under color of law, and claim is made herein for compensatory damages as listed above, punitive damages pursuant to 42 U.S.C.A. §1983, and attorney fees under §1983 and/or 42 U.S.C.A. §1988.

**COUNT II:**

Plaintiff incorporates all of the foregoing paragraphs by reference and further alleges:

45.

The actions of the Defendants, either individually or in concert, caused the violation of the rights of Myles pursuant to the Louisiana Constitution of 1974 Article I Section 20, and the actions of these Defendants were in reckless disregard for Myles' state civil rights protected by the Louisiana Constitution of 1974.

**COUNT III: WRONGFUL DEATH AND SURVIVAL UNDER STATE LAW**

Plaintiff incorporates all of the foregoing paragraphs by reference and further alleges:

46.

The actions, omissions, and/or inaction of the Defendants, either individually or in concert, violated Louisiana law, as such acts and inaction were negligent and constituted fault within the meaning of LSA-C.C. art 2315, LSA-C.C. art. 2315.1, and LSA-C.C. art.2315.2.

47.

Under Louisiana law, Defendant Sheriff WOOD is *respondeat superior* liable for the tortious conduct of his employees/agents under his direction and supervision and thus liable for the tortious conduct and fault of Defendants PHIPPS, HALL, MINOR, THOULIN and TAYLOR for all compensatory damages suffered by the Plaintiff under Louisiana statutory and/or constitutional law.

48.

Andrew Myles, a single male, had one (1) biological child, J.G, who is the proper statutory beneficiary in accordance with Louisiana Civil Code arts. 2315.1 and 2315.2. This action is brought on behalf of J.G. by her mother and natural tutor, Peyton George.

49.

As a direct and proximate result of the aforementioned wrongful acts and omissions by Defendants, resulting in the wrongful death of Andrew Myles, the decedent's statutory beneficiary has the right to recover all wrongful death and survival damages allowed by law, whether or not specifically alleged, including but not limited to:

All Survival Damages of the deceased Andrew Myles allowed by Louisiana law, including:

a) Pre-death fear by Andrew Myles;
b) Conscious mental and physical pain and suffering of Andrew Myles;

c) Physical injury to Andrew Myles' body;

d) Mental anguish and emotional distress;

e) Loss of enjoyment of life;

f) Medical expenses; and

g) Loss of life.

All Wrongful Death Damages allowed by Louisiana law, including:

a) Past, present, and future loss of love, companionship, attention, and affection of her father;

b) Past, present, and future emotional distress and psychological injury;

c) Loss of consortium, service, and society of her father; and

d) Past and present medical expenses.

## COUNT III: PUNITIVE DAMAGES

Plaintiff incorporates all of the foregoing paragraphs by reference and further alleges:

50.

The conduct of the Defendants, as referenced in the facts set forth above, demonstrates a reckless and callous indifference for Myles' federally protected rights, secured under the Eighth and Fourteenth Amendments. The conduct alleged above was extreme, outrageous, malicious, and exhibited deliberate indifference to the civil rights of Myles and to his physical well-being. Defendants are liable to Plaintiff for their callous disregard for the decedent's federally protected rights and physical safety in an amount sufficient to deter Defendants from repeating such actions and for general deterrence purposes, in an amount to be determined by the jury in its enlightened conscious.

51.

Plaintiff prays for a jury trial as to all issues as the claims herein exceed the amount required for a jury trial and exceed the amount of $75,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a trial by jury on all issues, and after due proceedings had, there be judgment rendered herein in Plaintiff's favor and against all defendants, all in their individual or official capacities for which liability may lie under the applicable law, jointly, severally, and *in solido* in an amount commensurate with sustained compensatory damages, punitive damages, and attorney fees, together with legal interest thereon on all of those amounts, including attorney fees, from the date of judicial demand until paid, and for all costs of these proceedings. Plaintiff further prays for all other equitable relief for which justice and the law requires.

Respectfully Submitted,

**SWLA INJURY ATTORNEYS, LLC**
*Attorney for Plaintiff*

*/s/ Michael Williamson*
MICHAEL J. WILLIAMSON (31004)
mike@SWLAinjuryatty.com
RACHEL K. COUVILLION (33927)
rachel@SWLAinjuryatty.com
949 Ryan Street, Suite 130
Post Office Box 901 (70602)
Lake Charles, Louisiana 70601
Phone: (337) 419-3710
Facsimile: (337) 419-3729

**SERVICE INSTRUCTIONS**:

**SHERIFF MARK WOOD**
700 Murray Street
Alexandria, LA 71301

**DEPUTY GREGORY PHIPPS**
700 Murray Street
Alexandria, LA 71301

**LIEUTENANT MICHAEL HALL**
700 Murray Street
Alexandria, LA 71301

**DEPUTY JAMES MINOR**
700 Murray Street
Alexandria, LA 71301

**JULIA THOULIN**
700 Murray Street
Alexandria, LA 71301

**SERGEANT MARCUS TAYLOR**
700 Murray Street
Alexandria, LA 71301